UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANTHONY QUINN GIBSON, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-1422-JMS-MG |
| | ) | |
| CENTURION HEALTH OF INDIANA/ | ) | |
| MHM SERVICES, INC., STEPHANIE DORETHY, | ) | |
| and JACKIE CARR, | ) | |
| | | |
| *Defendants*. | | |

## ENTRY GRANTING MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*, SCREENING COMPLAINT, AND DIRECTING SERVICE OF PROCESS

Pending before the Court are *pro se* Plaintiff Anthony Quinn Gibson's Complaint, [Filing No. 1], and Motions for Leave to Proceed *In Forma Pauperis*, [Filing No. 5; Filing No. 7]. This Order first addresses Gibson's Motions for Leave to Proceed *In Forma Pauperis*, then screens his Complaint pursuant to 28 U.S.C. § 1915(e)(2), and directs service of process.

### I.
### MOTIONS TO PROCEED *IN FORMA PAUPERIS*

28 U.S.C. § 1915(a) permits the Court to authorize a plaintiff to file a lawsuit "without prepayment of fees" if the plaintiff "submits an affidavit" demonstrating that he lacks the assets to pay the filing fee at this time. 28 U.S.C. § 1915(a)(1). Mr. Gibson's first Motion for Leave to Proceed *In Forma Pauperis* was incomplete, and the Court required him to file a new one. [Filing No. 5; Filing No. 6.] He did so. [Filing No. 7.] Therefore, Mr. Gibson's first Motion to Proceed *In Forma Pauperis*, [5], is **DENIED AS MOOT**. Mr. Gibson's Second Motion to Proceed *In Forma Pauperis*, [7], meets the above standard and is therefore **GRANTED**. 28 U.S.C. § 1915(a).

The Court notes that, while *in forma pauperis* status allows the plaintiff to proceed without *pre*-payment of the filing fee, the plaintiff remains liable for the full fee. *Robbins v. Switzer,* 104 F.3d 895, 898 (7th Cir. 1997) (Every *in forma pauperis* litigant is liable for the filing fee; "all § 1915(a) does for any litigant is excuse the *pre*-payment of fees") (emphasis in original). The Court does not have the authority to waive the filing fee, and it remains due despite plaintiff's *in forma pauperis* status. *Fiorito v. Samuels*, 2016 WL 3636968, *2 (C.D. Ill. 2016) ("The Court does not have the authority to waive a filing fee"); *McDaniel v. Meisner*, 2015 WL 4773135, *5 (E.D. Wis. 2015) (same principle). The filing fee for *in forma pauperis* litigants is $350. *See* USDC Fee Schedule at https://www.insd.uscourts.gov/fees-financial-information (stating that the $402 filing fee includes a $52 administrative fee, but that the administrative fee "does not apply to…persons granted in forma pauperis status under 28 U.S.C. § 1915"). Immediate payment is not required; however, the $350 balance remains owing.

## II.
### SCREENING

### A. Standard of Review

Pursuant to 28 U.S.C. § 1915(e)(2), the Court shall dismiss a case brought by a plaintiff proceeding *in forma pauperis* "at any time if the court determines that . . . the action . . . is frivolous or malicious; . . . fails to state a claim on which relief may be granted; or . . . seeks monetary relief against a defendant who is immune from such relief." In determining whether a complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). To survive dismissal:

[the] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B.  The Complaint

Mr. Gibson sets forth the following allegations in his Complaint, [Filing No. 1], which the Court must accept as true at this time:

Mr. Gibson was hired by Defendant Centurion Health of Indiana/MHM Services, Inc. ("Centurion") in February 2022.  [Filing No. 1 at 5.]  While at Centurion, Mr. Gibson "experienced staff (Administrative Assistant and Mental Health Clerk both are white females) quitting or resigning because they refuse to work under" him because he is "a black man."  [Filing No. 1 at 5.]  Mr. Gibson also experienced the "Director of Nursing (White female) telling [him] that she doesn't like [him] because [he is] a man."  [Filing No. 1 at 5.]  He did not have "access to emails or doors due to [his] Administrative Assistant and Director of Nursing not submitting [his] information to have access throughout the prison."  [Filing No. 1 at 5.]

After informing his staff and leadership team that he was having hernia surgery, he asserts that his "regional manager (white female) wasn't pleased to hear that stating, 'You just got here.'"  [Filing No. 1 at 5.]  Mr. Gibson had hernia surgery on June 10, 2022.  [Filing No. 1 at 5.]  He alleges that while on leave under the Family and Medical Leave Act ("FMLA"), his "regional manager conspired with several of [his] staff members (3 Mental Health Professionals – white females) to fabricate a performance review on [him], for which she said that she monitored [him] from July 1, 2021, to June 30, 2022."  [Filing No. 1 at 5.]  Mr. Gibson returned from FMLA leave on July 25, 2022, and two days later, he received "a poor performance review" from the regional

manager and regional HR manager "causing [him] not to receive a pay increase." [Filing No. 1 at 5.]

Since Mr. Gibson was hired in February 2022, he asked the regional manager's "supervisor (Regional Vice President of Operations – black female) to investigate" why he was receiving an annual review after having been employed for about six months. [Filing No. 1 at 5.] He also "reached out to corporate office (Corporate Human Resource Manager – white male; and Executive Vice President – Asian male) for help and requested an internal investigation on the regional team, to no avail." [Filing No. 1 at 5.]

Three days after Mr. Gibson reported the regional team's action to the corporate office, he received "two additional writeups out of retaliation." [Filing No. 1 at 5.] Mr. Gibson alleges that "[o]ther leaders (white) that have poor job performance are not being treated like [he] was treated." [Filing No. 1 at 5.] One of the writeups from the regional manager and regional HR manager informed him that he "must work 40 hours a week." [Filing No. 1 at 5.] However, Mr. Gibson alleges that the regional manager and regional HR manager allow his "[Assistant Health Services Administrator ("ASHA")] (white male) and DON (white female) to come to work when they get ready" and that the regional manager "has stolen time and altered the AHSA timecard for months, illustrating that [the AHSA] comes in at 8am but he really shows up for work at 11am or 1pm and leaves at 3:30pm daily." [Filing No. 1 at 5.] Mr. Gibson asserts that he "was a salary employee that was not required to use the time clock." [Filing No. 1 at 5.]

Mr. Gibson also "tried to correct the behavior of [his] leadership staff Director of Nursing and [AHSA] – white male[] for cursing out and talking down to staff," but "the regional team (Regional Manager and Regional Human Resource Manager – white females) refused to accept" his counseling. [Filing No. 1 at 5.] The regional team "refused to accept" Mr. Gibson's 90-day

evaluation of the "AHSA (white male)," even after the AHSA signed the document.  [Filing No. 1 at 5.]  Mr. Gibson notes, however, that three days after the evaluation, the "AHSA wrote a note against [his] 90-day evaluation out of retaliation and shared it with the VPO, RM, and Regional HR (Regional Team he is friends with)."  [Filing No. 1 at 5.]  The same day as the AHSA's note, Mr. Gibson received an "irate" phone call from the "Regional VP of Operations (black female)," where she stated, "That man (AHSA – white male) needs his job. I wonder do you need yours?"  [Filing No. 1 at 5.]  The next day, Mr. Gibson was fired.  [Filing No. 1 at 5.]

Mr. Gibson asserts that since his termination, he has "filed for unemployment and was approved due to [Centurion] not wanting to respond to the Workforce Agency to give a reason for [his] termination."  [Filing No. 1 at 5.]  He has "applied for jobs-after-jobs to no avail" and alleges that his "career is being held up by [Centurion's] deceitful job verification tactics."  [Filing No. 1 at 5.]

Mr. Gibson names three Defendants: Centurion, Regional Manager Stephanie Dorethy, and Regional Human Resources Manager Jackie Carr.  [Filing No. 1 at 3.]  Mr. Gibson attaches a Charge of Discrimination he filed with the Indiana Civil Rights Commission ("ICRC") and the Equal Employment Opportunity Commission ("EEOC") on April 27, 2023, [Filing No. 1 at 10-12], along with an amended version filed on July 14, 2023, [Filing No. 1 at 13-15.]  The EEOC issued a Right to Sue Letter on both the original Charge of Discrimination and the amended version.  [Filing No. 1 at 15-18; Filing No. 1 at 19.]

In his Complaint, he alleges that he was discriminated and retaliated against based on his race and color ("I'm a black male and others are not treated the same"); his gender/sex ("Director

of Nursing said she didn't like me because I'm a male"); his age (born in 1971); and his disability

("ADA and FMLA – Retaliated against for going on leave").[1]   [Filing No. 1 at 5.]

Mr. Gibson appears to assert discrimination and retaliation claims under Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1981, the Age

Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), and the Americans With

Disabilities Act, 42 U.S.C. §12101, *et seq.* ("ADA"), and a retaliation claim under the FMLA, 29

U.S.C. § 2601, *et. seq.*

**C. Discussion**

*1. Title VII and ADEA Claims*

a. Timing

As a threshold matter, for Mr. Gibson to bring claims under Title VII and the ADEA in

federal court, he must have: (1) timely filed a charge with the EEOC, and (2) received a right to

sue letter from the EEOC.  *See* 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(b), (e), and (f); 29

U.S.C. § 626(d).  To meet the timeliness requirement, a plaintiff must file a charge with the EEOC

within 180 days of the allegedly discriminatory act, or within 300 days "if a [plaintiff] initially

institutes proceedings with a state or local agency that possesses the authority to address the alleged

discrimination." 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d); *see Russell v. Delco Remy Div.*,

51 F.3d 746, 750 (7th Cir. 1995).  This deadline "protect[s] employers from the burden of

---

[1] On his *pro se* Complaint form, Mr. Gibson checked the box alleging that Defendants discriminated against him based on his "disability or perceived disability *(specify disability)*." [Filing No. 1 at 5.] However, in the line provided after the check box to specify the disability, Mr. Gibson wrote "ADA and FMLA – Retaliated against for going on leave."  [Filing No. 1 at 5.] Despite not specifying his disability on the line provided, Mr. Gibson does specify later in the Complaint that he suffered from a hernia and had hernia surgery.  [Filing No. 1 at 5.]  Accordingly, the Court interprets Mr. Gibson's disability claims to be based only on his hernia and hernia surgery.

defending claims arising from employment decisions that are long past." *Mull v. ARCO Durethene Plastics, Inc.*, 784 F.2d 284, 291 (7th Cir. 1986) (internal quotation and citation omitted).

Mr. Gibson filed his first Charge of Discrimination with both the ICRC and the EEOC on April 27, 2023, [Filing No. 1 at 10-12], which is 240 days after Centurion terminated his employment on August 30, 2022, [Filing No. 1 at 5]. Because the ICRC possesses the authority to address the alleged discrimination under Indiana Code § 22-9-1-11, it appears that Mr. Gibson met the 300-day filing deadline. *See Russell*, 51 F.3d at 750.

b. Title VII Claims

Title VII prohibits an employer from discriminating against any individual with respect to his or her "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits an employer from retaliating against an employee "on account of [the] employee's having opposed, complained of, or sought remedies for, unlawful workplace discrimination." *Id.* § 2000e-3(a); *see Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013).

The statute, however, applies only to "employers"; it is well established that Title VII claims cannot be brought against individuals in their individual capacity. *Williams v. Banning*, 72 F.3d 552, 553-55 (7th Cir. 1995) (holding that there is no individual liability under Title VII and stating that "[b]ecause a supervisor does not, in [her] individual capacity, fall within Title VII's definition of employer, [the plaintiff] can state no set of facts which would enable [him] to recover under the statute"). Therefore, to the extent that Mr. Gibson intends to assert Title VII claims against Ms. Dorethy and Ms. Carr, those claims are **DISMISSED**.

As to whether Mr. Gibson sufficiently alleges a Title VII claim against Centurion, courts in this Circuit apply a "minimal pleading standard for simple claims of race or sex discrimination."

*Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). "To survive screening . . . a plaintiff need only allege enough facts to allow for a plausible inference that the adverse action suffered was connected to [his] protected characteristics." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) (emphasis omitted).

Here, Mr. Gibson's Complaint includes enough facts in support of claims against Centurion for both race and sex discrimination and retaliation under Title VII. He alleges that he is a black male. [Filing No. 1 at 5.] He also alleges that he suffered adverse actions on account of his gender and race, including: (1) the annual review where his supervisor "conspired" with three other white females and noted "poor performance" after only six months; (2) retaliatory writeups that "[o]ther leaders (white) that have poor job performance are not" receiving; (3) discriminatory treatment regarding work hours as compared to two white employees; and (4) termination. [Filing No. 1 at 5.] The claims are plausible based on these facts. Accordingly, Mr. Gibson's Title VII claims for discrimination and retaliation against Centurion **SHALL PROCEED.**

c.  ADEA Claim

The ADEA protects workers who are forty years old and older from discrimination based on age. *Brooks v. Avancez*, 39 F.4th 424, 433 (7th Cir. 2022). Like Title VII, there is no individual liability under the ADEA. *See Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 610 n.2 (7th Cir. 2001) (stating that a plaintiff properly brought her ADEA claim against her employer only because "there is no individual liability under the ADEA"); *see also E.E.O.C. v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1282 n.10 (7th Cir. 1995) ("We emphasize that our holding [that individuals cannot be held liable under the ADA] only applies directly to the ADA, though it obviously affects the resolution of the very similar questions under Title VII and the

ADEA.").  Because there is no individual liability under the ADEA, to the extent that Mr. Gibson intends to assert ADEA claims against Ms. Dorethy and Ms. Carr, those claims are **DISMISSED**.

As to Centurion, despite checking the box that he was discriminated against based on his age and indicating his birth year, Mr. Gibson does not allege that any of the actions taken against him were due to his age.  [Filing No. 1 at 5.]  His age is not mentioned once in the factual allegations portion of the Complaint.  [Filing No. 1.]  Accordingly, Mr. Gibson's ADEA discrimination and retaliation claims against Centurion are **DISMISSED**.

### 2.  *ADA Claims*

The ADA prohibits employers from discriminating against qualified individuals on the basis of a disability.  *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 179 (2012).  The ADA also "prohibits retaliating against individuals…who have engaged in activities protected by the ADA, such as filing a Charge of Discrimination with the EEOC or requesting reasonable accommodations."  *Rowlands v. United Parcel Serv. – Fort Wayne*, 901 F.3d 792, 798 (7th Cir. 2018).

Like Title VII and the ADEA, the ADA provides only for "employer" liability; there is no liability against individual employees or supervisors.  *AIC Sec. Investigations, Ltd.*, 55 F.3d at 1282.  Therefore, to the extent that Mr. Gibson intends to assert ADA claims against Ms. Dorethy and Ms. Carr, those claims are **DISMISSED**.

As to stating an ADA claim against Centurion, Mr. Gibson must allege that: "(1) he is 'disabled'; (2) he is qualified to perform the essential function of the job either with or without reasonable accommodation; and (3) he suffered an adverse employment action because of his disability."  *Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013) (quotation and citation omitted).  "Disability" within the meaning of the ADA is defined as "(A) a physical or

mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).  In turn, "major life activities" includes but is not limited to "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communication, and working" and "the operation of a major bodily function" such as "functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." *Id.* § 12102(2).

Here, Mr. Gibson has not alleged sufficient facts to plausibly show that he is disabled.  He does not mention how his hernia, or his hernia surgery, substantially limited a major life activity.  Rather, Mr. Gibson alleges: (1) that his regional manager "wasn't pleased to hear that" he was having surgery and stated, "You just got here"; and (2) that he improperly received a fabricated performance review right after returning from FMLA leave.  [Filing No. 1 at 5.]  While a hernia and hernia surgery are no doubt a "physical impairment," Mr. Gibson does not allege that he had any physical or mental restrictions as a result of the surgery.  As such, Mr. Gibson's ADA claim against Centurion is **DISMISSED**.

### 3. *Section 1981 Claim*

42 U.S.C. § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . ."  Making and enforcing contracts includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b).  Unlike Title VII, the ADEA, and the ADA, individuals can be liable under § 1981.

n.9 (7th Cir. 2023) ("Although supervisors are not subject to individual liability under Title VII, they can be held liable under Section 1981.").  But despite the difference in individual liability, the substantive analysis of a § 1981 claim is the same as a Title VII claim, and cases discussing claims under either provision are instructive.  *See Johnson v. Gen. Bd. of Pension & Health Benefits of United Methodist Church*, 733 F.3d 722, 728 (7th Cir. 2013) ("The substantive standards and methods that apply to Title VII also apply to 42 U.S.C. § 1981.").

Since Mr. Gibson alleges sufficient facts to support his Title VII claims against Centurion as explained above, Mr. Gibson likewise sufficiently alleges a claim under § 1981 against Centurion based on those same facts.  Accordingly, Mr. Gibson's § 1981 claims against Centurion **SHALL PROCEED.**

And because § 1981 allows for individual liability and Mr. Gibson alleges facts that implicate both Ms. Dorethy and Ms. Carr in the alleged adverse employment actions, Mr. Gibson's § 1981 claims against Ms. Dorethy and Ms. Carr also **SHALL PROCEED**.

### 4. *FMLA Retaliation Claim*

The FMLA permits eligible employees suffering from serious medical conditions to take unpaid leave from their jobs, 29 U.S.C. § 2612(a)(1)(D), and prevents employers from interfering with, 29 U.S.C. § 2615(a)(1), and retaliating against, 29 U.S.C. § 2615(a)(2), the employee's use of such leave.  *Pagel v. TIN Inc.*, 695 F.3d 622, 626 (7th Cir. 2012).  The FMLA defines an employer as anyone "who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I).  Stating a claim of retaliation under the FMLA requires the plaintiff to allege facts showing that either: (1) "his employer took a materially adverse action against him on account of his protected activity," such as using FMLA leave, or (2) "after taking FMLA leave . . . he was treated less favorably than other similarly

situated employes who did not take FMLA leave, even though he was performing his job in a satisfactory manner." *Burnett v. LFW Inc.*, 472 F.3d 471, 481-82 (7th Cir. 2006) (quotation and citation omitted).  Further, "[i]ndividuals may be held liable under the FMLA if: (1) the individual had supervisory authority over the plaintiff; and (2) the individual was at least partly responsible for the alleged violation." *Cuff v. Trans States Holdings, Inc.*, 816 F. Supp. 2d 556, 566 (N.D. Ill. 2011).

Here, Mr. Gibson alleges that Centurion, Ms. Dorethy, and Ms. Carr retaliated against him because he took FMLA leave due to hernia surgery.  [Filing No. 1 at 5.]  He alleges that two days after returning from his FMLA leave, he received an annual review from Ms. Dorethy and Ms. Carr that noted "poor performance" despite having been employed for only six months and that this review "caus[ed] [him] not to receive a pay increase."  [Filing No. 1 at 5.]  This allegation is sufficient to state a claim for FMLA retaliation against Centurion, Ms. Dorethy, and Ms. Carr. Accordingly, Mr. Gibson's FMLA retaliation claim **SHALL PROCEED**.

## IV.
### CONCLUSION

The Court, having considered the above action and the matters that are pending, makes the following rulings:

1. Mr. Gibson's first Motion for Leave to Proceed *In Forma Pauperis*, [5], is **DENIED AS MOOT**.

2. Mr. Gibson's second Motion for Leave to Proceed *In Forma Pauperis*, [7], is **GRANTED**.

3. At this time, the Court has not determined that the action must be dismissed pursuant to 28 U.S.C. § 1915(e), and therefore, the action **SHALL PROCEED** as to the following claims:
   a. discrimination and retaliation under Title VII against Centurion;
   b. discrimination and retaliation under 42 U.S.C. § 1981 against all Defendants; and

    c. retaliation under the FMLA against all Defendants.

4. Mr. Gibson's discrimination and retaliation claims against Ms. Dorethy and Ms. Carr under Title VII, the ADA, and the ADEA are **DISMISSED WITH PREJUDICE**.[2]

5. Mr. Gibson's discrimination claims against Centurion under the ADA and the ADEA are **DISMISSED WITHOUT PREJUDICE**.

6. Because Mr. Gibson is proceeding *in forma pauperis*, Federal Rule of Civil Procedure 4(c)(3) requires the Court to order service. Accordingly, the Clerk is **DESIGNATED** pursuant to Rule 4(c)(3) to issue process to Defendants Centurion Health of Indiana/MHM Services, Inc., Ms. Dorethy, and Ms. Carr in the manner specified by Rule 4(d). Process shall consist of the Complaint, [Filing No. 1], applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Entry.

7. If Mr. Gibson believes that additional claims were alleged in the Complaint, but not identified by the Court in this Entry, he shall have until **October 12, 2023**, to identify those claims.

Date: 9/15/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**<u>Distribution via United States Mail to:</u>**

Anthony Quinn Gibson
619 Chambord Drive
Brandon, MI 39042

Centurion Health of Indiana/MHM Services, Inc.
c/o CT Corporation System
334 North Senate Avenue
Indianapolis, IN 46204

---

[2] The Court finds that dismissal with prejudice is appropriate because Mr. Gibson would not be able to cure the deficiency the Court has identified. *See Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) ("[D]istrict courts have broad discretion to deny leave to amend . . . where the amendment would be futile.").

Stephanie Dorethy
550 N. Meridian Street, 1st Floor
Indianapolis, IN 46204

Jackie Carr
550 N. Meridian Street, 1st Floor
Indianapolis, IN 46204