UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANTHONY QUINN GIBSON, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-1422-JMS-MG |
| | ) | |
| CENTURION HEALTH OF INDIANA/ | ) | |
| MHM SERVICES, INC., STEPHANIE DORETHY, and | ) | |
| JACKIE CARR, | ) | |
| | ) | |
| *Defendants.* | ) | |

## **ORDER**

On September 15, 2023, the Court granted *pro se* Plaintiff Anthony Gibson's Motion for Leave to Proceed *In Forma Pauperis* and screened his Complaint pursuant to 28 U.S.C. § 1915(e)(2). [Filing No. 8.] The Court determined that some claims could proceed, some were dismissed with prejudice, and some were dismissed without prejudice. The Court gave Mr. Gibson permission to file an Amended Complaint, and he has now done so. [Filing No. 18.] This Order addresses Mr. Gibson's *In Forma Pauperis* status and screens the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2).

### I.
### *IN FORMA PAUPERIS* STATUS

Mr. Gibson asks in his Amended Complaint for a waiver of the filing fee. [Filing No. 18 at 8.] On August 23, 2023, Mr. Gibson filed a Motion for Leave to Proceed *In Forma Pauperis*, [Filing No. 5], but it was incomplete, and the Court ordered him to file a completed Motion for Leave to Proceed *In Forma Pauperis*, [Filing No. 6]. He did, [Filing No. 7], and the Court granted his Motion for Leave to Proceed *In Forma Pauperis*, [Filing No. 8], and allowed him to proceed

1

without pre-payment of the filing fee. This status remains true, but the Court notes that it only has the authority to allow Mr. Gibson to proceed without pre-payment of the filing fee and does not have the authority to waive the fee completely. *Robbins v. Switzer*, 104 F.3d 895, 898 (7th Cir. 1997) (Every *in forma pauperis* litigant is liable for the filing fee; the *in forma pauperis* statute—28 U.S.C. § 1915(a)—only "excuse[s] the *pre*-payment of fees") (emphasis in original). Although the Court cannot waive the fee altogether, the Court notes that immediate payment is not required.

## II.
### SCREENING

**A. Standard of Review**

Pursuant to 28 U.S.C. § 1915(e)(2), the Court shall dismiss a case brought by a plaintiff proceeding *in forma pauperis* "at any time if the court determines that . . . the action . . . is frivolous or malicious; . . . fails to state a claim on which relief may be granted; or . . . seeks monetary relief against a defendant who is immune from such relief." In determining whether a complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Lagerstrom v. Kingston,* 463 F.3d 621, 624 (7th Cir. 2006). To survive dismissal:

> [the] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. The Complaint

Mr. Gibson sets forth the following factual allegations in his Amended Complaint,[1] [Filing No. 18], which the Court must accept as true at this time:

Mr. Gibson was hired by Defendant Centurion Health of Indiana/MHM Services, Inc. ("Centurion") in February 2022. [Filing No. 18 at 5.] While at Centurion, Mr. Gibson "experienced staff (Administrative Assistant and Mental Health Clerk both are white females) quitting or resigning because they refuse to work under" him because he is "a black man." [Filing No. 18 at 5.] Mr. Gibson also experienced the "Director of Nursing (White female) telling [him] that she doesn't like [him] because [he is] a man." [Filing No. 18 at 5.] He did not have "access to emails or doors due to [his] Administrative Assistant and Director of Nursing not submitting [his] information to have access throughout the [facility]." [Filing No. 18 at 5.]

After informing his staff and leadership team that he was having hernia surgery, he asserts that his "regional manager (white female) wasn't pleased to hear that stating, 'You just got here.'" [Filing No. 18 at 5.] Mr. Gibson had hernia surgery on June 10, 2022. [Filing No. 18 at 5.] He alleges that while on leave under the Family and Medical Leave Act ("FMLA"), his "regional manager conspired with several of [his] staff members (3 Mental Health Professionals – white females) to fabricate a performance review on [him], for which she said that she monitored [him] from July 1, 2021, to June 30, 2022," despite the fact that he had only been employed since February 2022. [Filing No. 18 at 5.] Mr. Gibson returned from FMLA leave on July 25, 2022, and two days later, he received "a poor performance review" from the regional manager and regional HR manager "causing [him] not to receive a pay increase." [Filing No. 18 at 5.]

---

[1] The factual allegations in Mr. Gibson's Amended Complaint are the same as from his original Complaint with one exception: the Amended Complaint includes additional allegations regarding age discrimination. [Filing No. 18 at 5; Filing No. 1 at 5.]

3

Since Mr. Gibson was hired in February 2022, he asked the regional manager's "supervisor (Regional Vice President of Operations – black female) to investigate" why he was receiving an annual review after having been employed for about six months. [Filing No. 18 at 5.] He also "reached out to corporate office (Corporate Human Resource Manager – white male; and Executive Vice President – Asian male) for help and requested an internal investigation on the regional team, to no avail." [Filing No. 18 at 5.]

Three days after Mr. Gibson reported the regional team's action to the corporate office, he received "two additional writeups out of retaliation." [Filing No. 18 at 5.] Mr. Gibson alleges that "[o]ther leaders (white) that have poor job performance are not being treated like [he] was treated." [Filing No. 18 at 5.] One of the writeups from the regional manager and regional HR manager informed him that he "must work 40 hours a week." [Filing No. 18 at 5.] However, Mr. Gibson alleges that the regional manager and regional HR manager allow his "[Assistant Health Services Administrator ("ASHA")] (white male) and [Director of Nursing] (white female) to come to work when they get ready" and that the regional manager "has stolen time and altered the AHSA timecard for months, illustrating that [the AHSA] comes in at 8am but he really shows up for work at 11am or 1pm and leaves at 3:30pm daily." [Filing No. 18 at 5.] Mr. Gibson asserts that he "was a salary employee that was not required to use the time clock." [Filing No. 18 at 5.]

Mr. Gibson also "tried to correct the behavior of [his] leadership staff Director of Nursing and [AHSA] – white male[] for cursing out and talking down to staff," but "the regional team (Regional Manager and Regional Human Resource Manager – white females) refused to accept" his counseling. [Filing No. 18 at 5.] The regional team "refused to accept" Mr. Gibson's 90-day evaluation of the "AHSA (white male)," even after the AHSA signed the document. [Filing No. 18 at 5.] Mr. Gibson notes, however, that three days after the evaluation, the "AHSA wrote a note

4

against [his] 90-day evaluation out of retaliation and shared it with the VPO, RM, and Regional HR (Regional Team he is friends with)." [Filing No. 18 at 5.] The same day as the AHSA's note, Mr. Gibson received an "irate" phone call from the "Regional VP of Operations (black female)," where she stated, "That man (AHSA – white male) needs his job. I wonder do you need yours?" [Filing No. 18 at 5.] The next day, Mr. Gibson was fired. [Filing No. 18 at 5.]

Mr. Gibson asserts that he experienced "discriminatory remarks" regarding his age, that "preferential treatment" was given toward younger employees, that there was a significant age disparity between him and the individuals involved, and that before his termination, he was one of the two oldest employees. [Filing No. 18 at 5.] Mr. Gibson also asserts that since his termination, he has "filed for unemployment and was approved due to [Centurion] not wanting to respond to the Workforce Agency to give a reason for [his] termination." [Filing No. 18 at 5.]

Mr. Gibson names three Defendants: Centurion, Regional Manager Stephanie Dorethy, and Regional Human Resources Manager Jackie Carr. [Filing No. 18 at 3.] Mr. Gibson attaches a Charge of Discrimination he filed with the Indiana Civil Rights Commission ("ICRC") and the Equal Employment Opportunity Commission ("EEOC") on April 27, 2023, [Filing No. 18 at 10-12], along with an amended version filed on July 14, 2023, [Filing No. 18 at 13-14.] The EEOC issued a Right to Sue Letter on both the original Charge of Discrimination and the amended version. [Filing No. 18 at 15-18; Filing No. 18 at 19.]

In his Complaint, he alleges that he was discriminated and retaliated against based on his race and color ("I'm a black male and others are not treated the same"); his gender/sex ("Director of Nursing said she didn't like me because I'm a male"); and his age (born in 1971). [Filing No. 18 at 5.] Mr. Gibson asserts discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Age Discrimination in

5

Employment Act, 29 U.S.C. § 621, et seq. ("ADEA"), and 42 U.S.C. § 1981.[2] [Filing No. 18 at 4.]

**C. Discussion**

    *1. Section 1981 Claims Against All Defendants*

In the Court's September 15, 2023 Order screening Mr. Gibson's original Complaint, the Court found that Mr. Gibson's claims for discrimination and retaliation under § 1981 against all Defendants met the screening standard and that those claims could go forward. [Filing No. 15 at 10-11.] Because Mr. Gibson's Amended Complaint includes the exact same allegations that were material to the Court's analysis in the September 15, 2023 Order as it pertains to his claims under § 1981, the Court incorporates that analysis, [Filing No. 15 at 10-11], to this Order, and determines that Mr. Gibson's claims for discrimination and retaliation under § 1981 against all Defendants **SHALL PROCEED**.

    *2. Title VII Claims Against Centurion*[3]

In the Court's September 15, 2023 Order screening Mr. Gibson's original Complaint, the Court found that Mr. Gibson's claims for discrimination and retaliation under Title VII against

---

[2] In his original Complaint, Mr. Gibson asserted a retaliation claim under the FMLA, 29 U.S.C. § 2601, *et. seq.* [Filing No. 1 at 5.] In the Court's September 15, 2023 Screening Order, the Court determined that Mr. Gibson's FMLA retaliation claim could proceed against all Defendants. [Filing No. 8 at 11-12.] Yet in his Amended Complaint, Mr. Gibson did not assert any claims under the FMLA. [Filing No. 18.] "When a plaintiff files an amended complaint, the new complaint supersedes all previous complaints and controls the case from that point forward . . . ." *Chasensky v. Walker*, 740 F.3d 1088, 1094 (7th Cir. 2014) (quotation and citation omitted). Because the Amended Complaint controls the case, the Court focuses only on the claims in the Amended Complaint.

[3] The Court only addresses Title VII claims against Centurion because the Court already dismissed with prejudice Mr. Gibson's Title VII claims against Ms. Dorethy and Ms. Carr. [Filing No. 15 at 7 (dismissing the Title VII claims against Ms. Dorethy and Ms. Carr because Title VII claims cannot be brought against individuals (citing *Williams v. Banning*, 72 F.3d 552, 553-54 (7th Cir. 1995)).]

Centurion met the screening standard and that those claims could go forward. [Filing No. 15 at 6-8.] Because Mr. Gibson's Amended Complaint includes the exact same allegations that were material to the Court's analysis in the September 15, 2023 Order as it pertains to his claims under Title VII, the Court incorporates that analysis, [Filing No. 15 at 6-8], to this Order, and determines that Mr. Gibson's claims for discrimination and retaliation under Title VII against Centurion **SHALL PROCEED**.

### 3. *ADEA Claims Against Centurion*[4]

#### a. Timing

As a threshold matter, for Mr. Gibson to bring claims under the ADEA in federal court, he must have: (1) timely filed a charge with the EEOC, and (2) received a right to sue letter from the EEOC. *See* 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(b), (e), (f); 29 U.S.C. § 626(d). To meet the timeliness requirement, a plaintiff must file a charge with the EEOC within 180 days of the allegedly discriminatory act, or within 300 days "if a [plaintiff] initially institutes proceedings with a state or local agency that possesses the authority to address the alleged discrimination." 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d); *see Russell v. Delco Remy Div.*, 51 F.3d 746, 750 (7th Cir. 1995). This deadline "protect[s] employers from the burden of defending claims arising from employment decisions that are long past." *Mull v. ARCO Durethene Plastics, Inc.*, 784 F.2d 284, 291 (7th Cir. 1986) (internal quotation and citation omitted).

Mr. Gibson filed his first Charge of Discrimination with both the ICRC and the EEOC on April 27, 2023, [Filing No. 18 at 10-12], which is 240 days after Centurion terminated his

---

[4] The Court only addresses ADEA claims against Centurion because the Court already dismissed with prejudice Mr. Gibson's ADEA claims against Ms. Dorethy and Ms. Carr. [Filing No. 15 at 7-8 (dismissing the ADEA claims against Ms. Dorethy and Ms. Carr because ADEA claims cannot be brought against individuals (citing *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 610 n.2 (7th Cir. 2001))).]

employment on August 30, 2022, [Filing No. 18 at 5]. Because the ICRC possesses the authority to address the alleged discrimination under Indiana Code § 22-9-1-11, it appears that Mr. Gibson met the 300-day filing deadline. *See Russell*, 51 F.3d at 750.

### b. Pleading Standard

The ADEA protects workers who are forty years old and older from discrimination based on age. *Brooks v. Avancez*, 39 F.4th 424, 433 (7th Cir. 2022). Courts in this Circuit apply a "minimal pleading standard" for "simple" discrimination claims. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). "To survive screening . . . , a plaintiff need only allege enough facts to allow for a plausible inference that the adverse action suffered was connected to [his] protected characteristics." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022).

Mr. Gibson states that he was born in 1971, making him above forty years old when he worked at Centurion. [Filing No. 18 at 5.] He alleges that he experienced age discrimination because "preferential treatment" was given toward younger employees but not him, there was a significant age disparity between him and the individuals involved in the events leading up to his termination, and before his termination, he was one of the two oldest employees. [Filing No. 18 at 5.] These allegations meet the minimal pleading standard because the allegations support a plausible inference that the adverse employment actions (Mr. Gibson's treatment and termination) were both connected to a protected status (his age). Mr. Gibson's ADEA discrimination and retaliation claims against Centurion **SHALL PROCEED**.

### III.
### CONCLUSION

The Court, having considered the above action, makes the following rulings:

1. Mr. Gibson's discrimination and retaliation claims under § 1981 against all Defendants **SHALL PROCEED**.

8

2. Mr. Gibson's discrimination and retaliation claims under Title VII and the ADEA against Centurion **SHALL PROCEED**.

Defendants shall answer or otherwise plead to the Amended Complaint in accordance with the Federal Rules of Civil Procedure.

Date: 11/29/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**
**Distribution via United States Mail to:**

Anthony Quinn Gibson
619 Chambord Drive
Brandon, MS 39042